# Mary Zeman, Appellee, v. North American Union, Appellant.

## Gen. No. 17,482.

1. APPEALS AND ERRORS—*grounds for reversal.* Failure of the appellee to file a brief or argument in the Appellate Court is not a ground for reversal.

2. FRATERNAL INSURANCE—*waiver of forfeiture.* Reception and retention of membership dues and recognition of membership by a fraternal benefit society, with knowledge on the part of its general officers that the member is or has been engaged in a prohibited occupation subsequent to admission to membership, will, in the absence of any formal and official action taken to effect his suspension or expulsion, waive a forfeiture of benefits; notwithstanding the existence of a by-law providing that receipt and retention of dues should in no case constitute a waiver.

3. FRATERNAL INSURANCE—*prohibited occupation.* If a mutual benefit society has with knowledge of the facts, in its course of conduct or by acts or declarations, misled the insured in regard to his right to engage in a prohibited occupation, or created a belief on his part that the strictest compliance with the letter of the contract as to engaging therein would not be exacted, and the insured in consequence fails to comply with that portion of the contract, the society will be held to have waived the requirement and to be estopped from holding the condition as a cause of forfeiture.

4. FRATERNAL INSURANCE—*By-law involving forfeiture of contract rights should be unambiguous.* Where a by-law of a fraternal benefit society involving the forfeiture of contract rights that have been paid for is sought to be drastically enforced in the teeth of an apparent reliance of the assured up to the time of his death upon the supposed continuance of those rights, the by-laws should be clear and unambiguous and the record should show it.

5. FRATERNAL INSURANCE—*by-law held ambiguous.* A by-law, the earliest part of which provides for suspension and forfeiture without notice, while the latter part directs that no benefits shall be paid to the beneficiary on account of the death of the member while in any of certain employments enumerated, as the direct or indirect result of engaging therein, is ambiguous upon the question of whether a forfeiture is effected where the assured dies after quitting such prohibited employment.

Appeal from the Municipal Court of Chicago; the Hon. EDWARD A. DICKER, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed June 30, 1913.

R. E. HAMILTON, for appellant.

F. J. KARASEK, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of the Municipal Court of Chicago in a case of the first class. The judgment is for $2,000 in favor of Mary Zeman. It is against the North American Union—a fraternal beneficiary organization, and was rendered on the verdict of a jury in a suit brought by Mary Zeman as beneficiary under a benefit certificate for $2,000 issued to one James Zeman, who was her husband, in his life time. The certificate was dated July 1, 1902, and was made payable to Mary Zeman out of the defendant's mortuary fund

"in accordance with and under the provisions and the laws governing the said fund upon satisfactory proofs of the death of said member, and upon the surrender of this certificate, provided that said member is in good standing in this Association at the time of his death and provided also that this certificate shall not have been previously surrendered by said member, or cancelled in accordance with the laws of this Association, and subject also"

to certain provisions which follow in the certificate, among which are:

"If said member shall suffer his membership to be terminated from any cause prior to his death he shall forfeit to said North American Union all monies paid in by him on account of his membership in the Association, and he and his beneficiary shall forfeit all rights acquired by virtue of his said membership, and shall not be entitled to any of the payments herein provided.

"This contract shall be incontestable after two years from the date hereof except for * * * engaging in prohibited occupations or becoming habitually addicted to the excessive use of intoxicating liq-

uors, opium or other injurious drugs or substances contrary to the laws, rules and regulations of the Association and the agreements of the members.''

The promise to pay the benefit is also made on condition that the statements made by the member, James Zeman, in his application for membership and in the medical examiner's blank, etc., are a part of the contract, and

''On condition that the said member complies in future with the Laws, Rules and Regulations now governing the said North American Union and the Mortuary and Reserve Funds thereof, or that may hereinafter be enacted to govern the same, all of which said Laws, Rules and Regulations are also made a part of this contract.''

The plaintiff in the court below maintained that James Zeman was in good and regular standing at the time of his death and that she is entitled to the benefit provided for in the certificate.

The defendant contended that the said James Zeman was not at the time of his death a member in good standing in the Association, and proved that although he was an upholsterer in 1899, when he was admitted to membership in the North American Union, and in 1902, when the amount of his benefit certificate was increased from $1,000 to $2,000 and a new certificate issued to him, yet on May 1st, 1906, he became engaged in the business of a saloon keeper until July 18, 1909, when he withdrew from said saloon business on account of ill health resulting from a surgical operation from which he never fully recovered, and that during a portion of each day at least while he was engaged in the saloon business he tended bar in his various saloons.

The defendant also proved that in a written application dated June 14, 1902, ostensibly ''for the purpose of securing membership in the North American Union,'' but really for the purpose of having his bene-

fit certificate increased as before stated, Zeman "represented and declared" (truthfully) that he was not then "engaged in any of the following occupations or employments," (here follows a long list of occupations, not including an upholsterer and closing with) * * * "saloon keeper, bar tender or personally engaged in the manufacture or sale of intoxicating liquors," and that this application signed by Zeman also contained the following clause:

"I am not now addicted to the excessive use of intoxicating liquors, opium or other injurious substances, and should I become so addicted or actively engaged in any of the above enumerated occupations or employments my so doing shall forfeit and absolutely terminate thereafter all rights, interests, payments, benefits or privileges of myself, my family, heirs, dependents or beneficiaries without proceedings for expulsion or otherwise on the part of said Association."

The evidence showed that all dues to the Association up to and beyond the death of James Zeman, which occurred on November 26, 1909, were promptly paid by said Zeman to the proper officer of that Local Council of the Association to which he belonged, and that the last payment was made on November 9, 1909, and that at the date of his death Zeman was not in arrears to the North American Union on account of any unpaid premiums, dues, assessments, fines or other charges.

Proper proofs of death were made, showing these matters. It was admitted also that a demand had been made on the Association for payment of the certificate, and refused.

In its defense the defendant introduced the original certificate of the State Insurance Superintendent in 1895, certifying that it was a legally organized Fraternal Beneficiary Society under the laws of Illinois, and the "articles of association" appended thereto, which declare the objects of the association to be "to

unite fraternally  *  *  *  all white men between the
ages of twenty-one and sixty years of age who are
physically and morally acceptable,'' and make pro-
vision for a mortuary fund and plan of insurance,
but say nothing as to prohibited or permitted employ-
ments.  Amendments to the articles of association,
adopted July 2, 1903, reducing the minimum age to 18
and extending the purposes of the benefit fund, were
also admitted in evidence.  In relation to the mortuary
fund the amendments provide:

"That clause 'Third' of the objects of said associa-
tion be changed so as to read as follows:

Third—to establish and maintain a Mortuary
Benefit Fund from which shall be paid benefits, in
case of disability and death or either resulting from
disease, accident or old age of its members.  Such
payments to be subject in all cases to compliance by
the member with the contract, rules and laws of this
Order.''

The defendant then introduced, with the assent of
the plaintiff, certain by-laws of the association, with
the date of their enactment.  The most material parts
of them so introduced, with such dates, follow:

#### "LAW 3, SECTION 2, AS AMENDED.

Persons who are engaged in the following occupa-
tions are not acceptable risks and are ineligible for
membership  in  the  order:  Railroad  switchmen,
*  *  *  saloon keepers, bar tenders, and those per-
sons engaged in the manufacture or sale of intoxicat-
ing liquors.  *  *  *  *  *  *  *  *
*  *  *  *  *  *  *  *  *  *  *

Said amended Section 2 of said Law 3 was enacted on
May 20, 1909, and in force and effect on May 20, 1909.

#### LAW 3, SECTION 3.

All members of the order are prohibited from en-
gaging in or pursuing any of the occupations or em-

ployments enumerated in the preceding Section of this law, * * * and any member of the order who shall, after obtaining membership therein, become engaged in or pursue any business or employment enumerated in Section 2 of this law * * * shall stand suspended from the Order by operation of law without notice and forfeit all interest in the Mortuary and Reserve Funds from and after the date of engaging in such prohibited business * * * *and no benefit or benefits shall be paid to the beneficiary of any member on account of the death of such member occurring while engaged in any of the employments enumerated * * * either as the direct or indirect result of engaging in such prohibited occupation.* * *

Said Section 3 of said Law 3 was enacted on March 15, A. D. 1906, and in force and effect on July 1, A. D. 1906.

## LAW 9, SECTION 3.

A member of this Order who shall at any time after obtaining membership therein become engaged in any of the prohibited occupations specified in Section 2 of Law 3, or who violates any of the provisions of Section 3 of Law 3, shall stand suspended from the Order by operation of law without notice. Such suspension shall date from the time when such member so became engaged in such prohibited occupation or violated such provisions, and any and all payments thereafter to the collector of the Council to which such suspended member belonged shall in no case be held or construed as a waiver on the part of this Order of the provisions of this Section or of the laws of the Order applicable thereto.

If such member shall permanently relinquish such prohibited occupation or employment, he may be reinstated to membership in the same manner as is provided by the laws of the Order for reinstatement of members suspended for nonpayment of assessments, dues and premiums.

Said Section 3 of said Law 9 was enacted on March 21, A. D. 1901, and in force and effect on July 1, A. D. 1901.

### LAW 3, SECTION 11.

The receipt and retention of any premium or assessments shall not in any case constitute a waiver on the part of the Order of any law or defense which might or could have been relied on by the Order had such payments not been received or retained.

Said Section 11 of said Law 3 was enacted on March 19, A. D. 1908, and in force and effect on May 1, 1908.''

The other by-laws introduced in evidence relate to the form of the necessary application for reinstatement on the part of a suspended member, and the method of his reinstatement.

It was admitted on the record by counsel for plaintiff that James Zeman, after he ceased to be in the saloon business, did not attempt to become "reinstated" in the defendant. To this defense that James Zeman was not in good standing in the Order at the time of his death, but stood suspended from the time of going into the saloon business in 1906, and never even sought reinstatement, the plaintiff opposed the proposition that the defendant had waived the right to take this position in regard to the membership and standing of Zeman in the Order at the time of his death, by taking fom him, without objection, his dues as such member, both while with the knowledge of its officers he was actively and personally engaged in the saloon business and after his relinquishment of that business. Evidence was introduced before the jury strongly tending to prove that an assistant general manager of the defendant organization and a medical officer of the organization, whose offices were with the main offices of the Union and who were in constant touch with the Supreme Council of the Order, treated and did business with James Zeman as a member  of the Order in good standing while he was engaged, as they knew, in the saloon business. The evidence showed beyond question that the officers of the Local Council to which Zeman

belonged had knowledge of his business at all times. Indeed Zeman himself was president of the Local Council (Plzen Council No. 80) while in the saloon business.

The judge in effect instructed the jury before whom the case was tried, that they should find for the defendant unless they found from the evidence that the defendant waived the laws in relation to the prohibited occupation of saloon keeping, and that the burden of proving the waiver was on the plaintiff; but that if they found from the evidence that the defendant had, by its course of conduct or acts with the knowledge of the facts, misled Zeman in any way in regard to his engaging in the saloon business, and created a belief on his part that strict compliance with the letter of the contract as to his engaging in the saloon business would not be exacted and the insurance annulled by his continuing to engage in the saloon business, the defendant should be held "to have waived the requirement and to be estopped from holding the condition as a cause of forfeiture."

The jury found a verdict for the plaintiff for the sum of $2,000, and after a motion for a new trial, supported by elaborate reasons in writing, had been overruled, judgment was entered on the verdict and the defendant appealed.

In this court the appellant has assigned errors in relation to the admission and exclusion of evidence, as to the instructions or charge given to the jury and the refusal to modify it at the request of the defendant, and as to the denial of the motion for a new trial, and it is asserted that the finding of the jury and the judgment of the court were plainly against the law and the evidence in the case.

These assignments of error have been argued fully by the appellant in this court, but counsel for appellee, although entering an appearance, has not filed a brief or argument, but has left the court to investigate the

questions of fact and law presented without aid from the point of view of the plaintiff and without any other knowledge of the positions relied on to support the judgment than can be gathered from the abstract and the transcript of the record of the proceedings in the Court below. For this reason, according to former rules of the Supreme Court which have since been revised, and according to rules in the Appellate Courts of other districts in the state which may still be in force, this judgment could be reversed. *Winstanley v. Meacham,* 58 Ill. 97; *Wm. Nevius Banking Co. v. Brunges,* 72 Ill. App. 596, and cases therein cited; *Kurtz v. Kurtz,* 71 Ill. App. 71.

This has never been the rule in this district; a judgment, as we think, being entitled to a presumption in its favor which appellants and plaintiffs in error must overcome by a showing. But to abandon a meritorious judgment, as we have concluded this to be, to the investigation of the court, unaided except by the arguments of those who would overthrow it, is an unusual proceeding and we hope will continue to be so. It is unfair to the court, which ought not, in view of the volume of its work, to be unnecessarily burdened.

We cannot suppose the cause or judgment has been settled, for in that case the appeal would undoubtedly have been dismissed. We do not sit to make academic precedents, but to decide actual disputes.

We have given the cause, therefore, a thorough investigation. We cannot agree with the contention of the appellant.

In *Bruley v. Royal League,* 166 Ill. App. 440, this court, after a full consideration of the very able and exhaustive opinion of the learned judge in the court below (*Bruley v. Royal League,* 3 Ill. Cir. Ct. Rep. 313), found itself unable to agree, one of the judges of this court being then unable to take part in the decision. The judgment of the circuit court rendered on the pleadings in favor of the Company was there-

fore affirmed. But the present case differs from that in many particulars, and there is nothing in the rulings or instructions of the court below in it, as we think, inconsistent with the rulings made by the circuit court in the *Bruley* case, *supra*.

Herein the jury were instructed in effect that the amended by-laws introduced in evidence by the defendant and on which it relies for its defense, although passed after the benefit certificate was issued and going into effect after Zeman had engaged in saloon keeping, were binding on him and were reasonable, and that the receipt and retention of the dues of Zeman by the local council after he engaged in the business of saloonkeeping and after the same became known to the Council of which he was a member, if such knowledge is shown from the evidence, would not constitute a waiver of the defendant to refuse payment of the certificate.

It was precisely this last proposition concerning the effect of the action of the local council in accepting and retaining dues from a member engaged in a prohibited business, that the circuit court sustained in *Bruley v. Royal League, supra,* and that is the whole purport of that decision affirmed by us under the rule.

The question in that case was whether the action of the Local Council or lodge, although held, as it has been clearly, to be the agent of the supreme or general body, must be held binding on that general body in a matter of waiver, in the teeth of regulations or by-laws to the contrary; not, as in the case at bar, whether the evidence tended so to show as to render a verdict by a jury to that effect reasonable, that the main or general or supreme body itself had by recognition of membership and acceptance of contemporaneous and subsequent dues waived or estopped itself against the enforcement of a forfeiture which it otherwise could have insisted on. The real question of fact in this case was whether representatives of the main

or supreme body had knowledge of the business of Zeman between May, 1906, and July, 1909. It inhered in the verdict of the jury, we think, under the instructions, that the jury found that such knowledge existed.

The question of law in the case is whether, in the absence of formal and official action, the reception and retention of membership dues and the recognition of Zeman's membership by the order, with such knowledge on the part of representatives of its management, waived the suspension or separation from the order for which the by-laws provided, in the face of section 11 of Law 3, providing that "The receipt and retention of any premium or assessments shall not in any case constitute a waiver on the part of the Order of any law or defense which might or could have been relied on by the Order had such payments not been received or retained," which section went into force in 1908.

We do not think that it was possible for the Order to incapacitate itself to waive a forfeiture of a valuable privilege or contract right or to estop itself from enforcing it.

The organization might, perhaps, limit by by-law the power of its agents, the local councils, and make this limitation binding on persons dealing with them; but it remains the law as laid down by the Court below in its instruction, that

"If *the defendant company* has with knowledge of the facts in its course of conduct or acts or declaration misled the insured in any way in regard to his being engaged in the said business or created a belief on the part of the assured that the strict compliance with the letter of the contract as to his engagement with the saloon business would not be exacted and the assured in consequence failed to comply with that portion of the contract which prohibits him from engaging in the saloon business, *the Company* will be held to

have waived the requirement and to be estopped from holding that condition as a cause of forfeiture.''

And that

*"The defendant* may waive the condition by which the rights and privileges accruing to a member may be forfeited and such waiver may be either by express agreement or by conduct of *the association* with knowledge of the facts indicating that the insured was still recognized as a member of the society.''

That which we have already said is sufficient to dispose of the case in our view, and it might, solely on the grounds stated, be affirmed.  But we may note another consideration leading to the same end.

If a by-law involving the forfeiture of contract rights that have been paid for is to be drastically enforced in the teeth of an apparent reliance of the assured up to the time of his death upon the supposed continuance of those rights, the by-law should be clear and unambiguous and the record should show it.  In the case at bar the assured, Zeman, unlike Bruley in the case of *Bruley v. Royal League, supra,* had left the ''prohibited business'' before his death.

Although in his ''application'' made in 1902, Zeman declared without reservation that his ''engaging in saloonkeeping shall forfeit and terminate thereafter all rights, etc., without proceedings for expulsion, etc.,'' yet there is nothing in the record which shows any law or regulation of the Order making the business of keeping a saloon or engaging in the sale of intoxicating liquors a ''prohibited occupation'' before the one enacted on May 20, 1909.  It is very probable, in view of the language in the application, that there was before this date, a section of a by-law (and very probably it was section 2 of Law 3), which declared that a ''saloonkeeper'' was ineligible for membership in the Order.  But if there was, the record does not show it. All that the record shows is an *amended* section 2 of

Law 3, which declares saloon keepers ineligible for membership, which was enacted May 20, 1909.

As to the suspension of one who, becoming a member, afterwards engages in saloonkeeping, there are two provisions in the record supposed to apply.

But do they necessarily do so? The one first enacted was section 3 of Law 9, enacted March 21, 1901, and in force July 1, 1901.

It says that a member of the Order who shall at any time, after obtaining membership therein, become engaged in any of the prohibited occupations specified in section 2 of Law 3, or who violates any of the provisions of section 3 of Law 3, shall stand suspended from the Order by operation of law without notice.

We have no means of knowing what were the "prohibited occupations" specified in section 2 of Law 3, or what were the provisions of section 3 of Law 3 in 1901. Section 2 of Law 3 as we know it was enacted May 20, 1909, and section 3 of Law 3, to be hereafter recited, on March 15, 1906. If section 2 of Law 3 and section 3 of Law 3 did not in 1901 specify saloonkeeping as a prohibited occupation, and there is no proof before us that they did, did the enactment of these sections or "By-laws" under these denominations in 1909 and 1906 respectively read into a by-law enacted in 1901 anything which made it apply to "saloonkeeping?" It is at least doubtful. But section 3 of Law 3 as presented to us does not specify the prohibited occupations any more than section 3 of Law 9. It says:

"All members of the Order are prohibited from engaging in or pursuing any of the occupations or employments *enumerated in the preceding section of this law,* etc."

It was enacted on March 15, 1906, as we have said. We know nothing of "the preceding section of this law" except as we are shown section 2 of Law 3, enacted three years later.

But if we should assume that in 1906, section 2 of

Law 3 was exactly the same so far as saloonkeeping is concerned as it was after May 20, 1909 (although we see no reason why we should), still the by-law presented to us as section 3 of Law 3 is ambiguous. We have quoted it in full before in this opinion and we now call attention to the italicized portion. The italics were used by us for the purpose of easy reference to it. Although the earlier part of the section provides for suspension and forfeiture without notice, the portion we have italicized, inconsistently or certainly superfluously, directs that no benefits shall be paid to the beneficiary of said member on account of the death of such member while engaged in any of the employments enumerated, as the direct or indirect result of engaging in such prohibited occupation. Zeman did not die "while engaged in saloon keeping," nor is there any evidence that his death was the direct or indirect result of his engaging in that occupation.

We do not think the by-laws are presented to us in any such shape, or are so framed as they are presented, as to justify us in enforcing a forfeiture in this case for failure to observe them.

If the contention of the defendant is referred solely to the contract right of forfeiture secured to it in the application and certificate, that is certainly something that could be waived by continued recognition of the membership.

The judgment of the Municipal Court of Chicago is affirmed.

*Affirmed.*